IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

FILED
U.S. DISTRICT COURT
INDIANAPOLIS DIVISION

2013 FEB 26  PM 4: 08

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

| | |
|---|---|
| KRISTINE R. REDNOUR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) **1: 13 -cv- 0 3 2 0 SEB -DKL** |
| vs. | ) Cause No. _____ |
| | ) |
| WAYNE TOWNSHIP and | ) |
| WAYNE TOWNSHIP FIRE | ) |
| DEPARTMENT, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY

Plaintiff Kristine R. Rednour, by counsel, for her Complaint for Damages and Demand for Trial by Jury, states as follows:

### I. INTRODUCTION

1.     This is an action brought by Kristine Rednour ("Ms. Rednour") against Defendants Wayne Township ("Wayne Township") and Wayne Township Fire Department ("WTFD"), between which parties there was an employment relationship. Defendants violated the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"), as amended by ADA Amendments Act of 2008 ("ADAAA"), by terminating Ms. Rednour's employment relationship and failing to accommodate her disability. Defendants acted deliberately and violated the civil rights of Ms. Rednour on the basis of her disability.

### II. EEOC COMPLIANCE

2.     Ms. Rednour exhausted all of the administrative proceedings available to her by timely filing a Charge of Discrimination on the basis of disability with the U.S. Equal Employment Opportunity Commission ("EEOC").

3.     Ms. Rednour filed her initial Charge of Discrimination with the EEOC on or about November 11, 2011. A copy of Ms. Rednour's Charge is attached hereto and marked as Exhibit 1.

4.     Ms. Rednour's Charge was timely filed in compliance with 42 U.S.C. § 12117 and 42 U.S.C. § 2000e-5.

5.     Ms. Rednour received a Dismissal and Notice of Rights on November 29, 2012, which was dated November 28, 2012. A true and accurate copy of the Dismissal and Notice of Rights is attached hereto and marked as Exhibit 2.

6.     This action was timely filed within ninety (90) days of receipt by Ms. Rednour of the Dismissal and Notice of Rights.

### III. JURISDICTION

7.     Jurisdiction of the Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, and 1343. This action is authorized and instituted pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq.*

8.     Jurisdiction to grant injunctive and declaratory equitable relief as well as to award damages is invoked pursuant to 42 U.S.C. § 12117.

9.     The alleged discriminatory acts were committed within the jurisdiction of the United States District Court for the Southern District of Indiana, Indianapolis Division.

### IV. VENUE

10.    Ms. Rednour is a resident of Hamilton County in the State of Indiana, and is a citizen of the United States of America.

11.    Defendant Wayne Township is located in Marion County, Indiana.

12.    Defendant Wayne Township Fire Department's headquarters are located in Marion County, Indiana.

2

13.     The discriminatory acts under the ADA alleged below arose in Marion County, Indiana. Marion County is located in the Southern District of Indiana; thus, this cause of action is properly venued in the Southern District of Indiana under 28 U.S.C. § 1391(b), which allows for an action to be brought in the district where the Defendants resides or in which the cause of action arose.

## V. **PLAINTIFF**

14.     Ms. Rednour is a citizen of the United States, and is currently, as she was during all times relevant to this Complaint, a resident of Hamilton County in the State of Indiana.

15.     Ms. Rednour resides in Cicero, Indiana.

16.     Ms. Rednour is a person entitled to protection under the ADA based on her disability.

## VI. **DEFENDANTS**

17.     Wayne Township is located at 5401 W. Washington St., Indianapolis, IN 46241.

18.     The Wayne Township Fire Department is located at 700 N. High School Rd., Indianapolis, IN 46214.

19.     At all times relevant to this action, Defendants employed Ms. Rednour.

## VII. **STATEMENT OF FACTS**

20.     Ms. Rednour began working for WTFD as a reserve paramedic on February 9, 2009 and as a full-time paramedic on June 9, 2009.

21.     Ms. Rednour was diagnosed with Type I diabetes, which is a disability, at the age of twelve (12) and has been vigilant in addressing her diabetes as well as compliant with her doctor's recommendations.

22.     WTFD had knowledge of Ms. Rednour's disability when she was hired as a paramedic.

3

23.    On June 22, 2011, while at work, Ms. Rednour suffered a drop in her blood sugar levels.

24.    In response, Ms. Rednour checked her blood sugar, drank some orange juice, and waited a short time until her blood sugar levels improved.  She then drank a Pepsi as well to be certain her blood sugar levels remained at a sufficient level.

25.    Shortly thereafter, Ms. Rednour's WTFD medic partner told her he no longer wanted to be her partner because of her diabetes.

26.    Other WTFD medics were willing to be Ms. Rednour's paramedic partner.

27.    Ms. Rednour spoke with her immediate supervisor, WTFD Lieutenant Felicity Morgan ("Lt. Morgan"), to inform her of what had transpired.  Lt. Morgan said she needed to let the Battalion Chief know what had occurred, to which Ms. Rednour agreed.

28.    The Deputy Chief of Administration, Rick Scott ("Chief Scott"), ordered Ms. Rednour later in the day to take off the remainder of the shift but told her this absence would not count against her since she was not sick and never requested to go home.

29.    On June 24, 2011, Chief Scott directed Ms. Rednour to visit Dr. Steven Moffatt ("Dr. Moffatt"), the Medical Director for Public Safety for WTFD, and informed her that she could not return to work until she had been released by Dr. Moffatt.

30.    On June 28, 2011 Dr. Moffatt determined that Ms. Rednour should be released to return to work on by July 1, 2011 on limited duty status with no driving of departmental vehicles for two (2) to four (4) weeks to assure an adjustment in her basal dose of insulin was working properly.  Ms. Rednour was scheduled to return to full duty status with no restrictions if no hypoglycemic episodes occurred during that time.

31.    On July 1, 2011, during a meeting with WTFD's Division Chief of Emergency Medical Services Justin Scott, Deputy Chief of Operations Matt Stewart, and Division Chief of

Training and Safety Pedro Caceres, Chief Scott asked Ms. Rednour to give WTFD permission to speak with Ms. Rednour's personal physician, Dr. Samuel Wentworth ("Dr. Wentworth"), who treated Ms. Rednour's diabetes.

32.     Ms. Rednour signed a release for WTFD to do so, but to Ms. Rednour's knowledge, no WTFD employee ever contacted Dr. Wentworth.

33.     Ms. Rednour also informed Chief Scott that Dr. Moffatt had expected her to be released to work that day, and Chief Sparks admitted that Dr. Moffatt had released Ms. Rednour to return to work, but Chief Sparks stated that he had more questions. Ms. Rednour was told she had to remain on paid leave.

34.     On July 5, 2011, Ms. Rednour emailed Chief Sparks and Chief Scott asking for an update but received no response.

35.     On July 11, 2011, Ms. Rednour inquired again as to when she could return to work, and in response, Chief Scott asked to meet with Ms. Rednour the following day.

36.     On July 12, 2011, Ms. Rednour met with Chief Scott and Fire Chief Gene Konzen ("Fire Chief Konzen"), and Chief Scott, who was not a medical doctor, advised Ms. Rednour that he had completed additional research on Type 1 diabetes. He then said that individuals with Type 1 diabetics should not be hired by the department, and Ms. Rednour "must have fallen through the cracks."

37.     Fire Chief Konzen assured Ms. Rednour that she was a good clinician and that she provided excellent patient care, but because her diabetes was allegedly not covered under their liability and automobile insurance, WTFD decided to sever her employment.

38.     Ms. Rednour was specifically told that her employment had to be terminated because of her disability.

5

39.     A co-worker also told Ms. Rednour that he and Ms. Rednour's other co-workers at WTFD were advised that she would not be returning to work because of her disability.

40.     Indeed, in her termination letter, WTFD stated that the separation was "due to unsolicited discovery of medical events caused from [Ms. Rednour's] diabetes."

41.     Ms. Rednour did not resign from her position; rather, she was discharged because WTFD refused to reasonably accommodate Ms. Rednour's disability.

42.     As a direct and proximate result of the foregoing conduct:

    (a)     Ms. Rednour incurred and continues to incur a substantial loss of past, present and future income;

    (b)     Ms. Rednour has lost the employee benefits provided by WTFD;

    (c)     Ms. Rednour has suffered damage to her career;

    (d)     Ms. Rednour has suffered mental and physical anguish; and

    (e)     Ms. Rednour has incurred additional financial losses, including the costs associated with invoking her federally protected civil rights.

## VIII. STATEMENT OF CLAIMS

### COUNT I
*(Discrimination under the Americans with Disabilities Act,*
*42 U.S.C. § 12101 et seq., as amended by the ADA Amendments Act of 2008.)*

43.     Ms. Rednour incorporates the allegations of paragraphs 1 through 42 above and, in addition, states that Defendants' acts and omissions in this matter discriminated against her because of her disability, her record of disability, and/or being regarded as having a disability in violation of the ADA.

44.     Defendants are engaged in an industry affecting commerce.

45.     Defendants have employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding year.

46.     Defendants satisfy the definition of an "employer" within the meaning of Section 101 of the ADA, 42 U.S.C. § 12111(5)(a).

6

47.    Ms. Rednour at all times relevant herein had the requisite skill, experience, education and other job-related requirements of the position she held with Defendants.

48.    Consequently, Ms. Rednour is a qualified individual with a disability under 42 U.S.C. § 12111(8).

49.    Ms. Rednour is disabled within the meaning of the ADA; that is, she has a physical impairment, has a record of, and/or is regarded as having a physical impairment that substantially limits a major life activity.

50.    At all times relevant herein, WTFD was aware of Ms. Rednour's disability and her need for a reasonable accommodation.

51.    WTFD intentionally discriminated against Ms. Rednour when it failed to provide a reasonable accommodation suggested by WTFD's own medical director, which was temporary and would not impose undue hardship on WTFD.

52.    Furthermore, other WTFD employees were willing to serve as Ms. Rednour's partner.

53.    Ms. Rednour's diabetes was the motivating factor in WTFD's decision to terminate Ms. Rednour's employment.

54.    WTFD's discharge of Ms. Rednour's employment was a discriminatory action taken against her because of her disability in violation of the ADA.

55.    As a result of Defendants' discriminatory acts and omissions, Ms. Rednour has suffered and will continue to suffer monetary damages and damages for mental anguish unless and until the Court grants relief.

## IX.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kristine Rednour prays for a judgment in her favor against Defendants, and prays that the following relief be awarded:

(a)   Grant a permanent injunction enjoining Defendants, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in disability discrimination and any other employment practice, which discriminates on the basis of disability, and from engaging in retaliation.

(b)   Order Defendants to institute and carry out policies, practices and programs which provide equal employment opportunities for disabled individuals, and which eradicate the effects of its past and present unlawful employment practices.

(c)   Order Defendants to make whole Ms. Rednour by providing appropriate back pay and front pay for actual damages with pre-judgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to Ms. Rednour's pecuniary losses.

(d)   Order Defendants to make whole Ms. Rednour by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including medical expenses, in amounts to be determined at trial.

(e)   Order Defendants to make whole Ms. Rednour by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices complained of above, including emotional pain, suffering, inconvenience, loss of enjoyment of life and humiliation, in amounts to be determined at trial.

(f)   Order Defendants to pay Ms. Rednour punitive damages for its malicious and/or reckless conduct described above, in amounts to be determined at trial.

(g)     Order Defendants to reinstate Ms. Rednour to an appropriate position, at an equal or improved salary.

(h)     Order Defendants to pay Ms. Rednour her special damages, in amounts to be determined at trial.

(i)     Order Defendants to pay damages to Ms. Rednour for any and all injuries to her career, in amounts to be determined at trial.

(j)     Order Defendants to reinstate Ms. Rednour to the same or similar position.

(k)     Award Ms. Rednour the costs of this action including reasonable attorneys' fees and any such further relief as the Court may deem just, proper and equitable.

(j)     Grant such further relief as the Court deems necessary and proper in the public interest.

## X.   RESERVATION OF RIGHTS

Pursuant to the rules of pleading and practice, Plaintiff reserves the right to assert additional violations of federal and state law.

## XI.   JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

Kevin W. Betz, Atty. No. 14188-82
Sandra L. Blevins, Atty. No. 19646-49
Courtney E. Campbell, Atty. No. 30557-49

Attorneys for Plaintiff Kristine Rednour

9